**GLA WATER MANAGEMENT COMPANY, Appellee,**

v.

**UNIVERSITY OF TOLEDO et al., Appellants.**

[Cite as *GLA Water Mgt. v. Univ. of Toledo*, 196 Ohio App.3d 290, 2011-Ohio-5034.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–11–1014.

Decided Sept. 30, 2011.

Robert J. Bahret, Paul R. Bonfiglio and Christine M. Gaynor, for appellee.

Mike DeWine, Attorney General, and Jerry K. Kasai and William C. Becker Jr., Assistant Attorneys General, for appellants.

YARBROUGH, Judge.

{¶ 1} This is an appeal of the judgment of the Lucas County Court of Common Pleas, granting plaintiff-appellee GLA Water Management Company declaratory relief and attorney's fees. For the reasons that follow, we reverse.

{¶ 2} This dispute arose from a 2007 request for proposal for water-treatment services issued jointly by defendants-appellants University of Toledo and Bowling Green State University. The request for proposal specifically stated that "[i]f an award is made, it shall be made to the responsive and responsible respondent whose proposal is determined to be the most advantageous to BGSU/UT. Price alone will not be the sole determining factor in the selection process." After receiving proposals, appellants awarded the contract to Crown Solutions Company. The parties do not dispute that appellee's proposal was for less money.

{¶ 3} Subsequently, on July 26, 2007, appellee filed a complaint against appellants in the Lucas County Court of Common Pleas, claiming that appellants had violated Ohio law by not awarding the contract to appellee when it was the lowest responsive and responsible bidder.[1] The complaint prayed for injunctive and declaratory relief, "damages for the loss of business, compensation, and other damages," and costs and attorney's fees. Appellee also filed a motion for a preliminary injunction that same day.

{¶ 4} On August 29, 2007, appellants moved to dismiss the complaint for lack of subject-matter jurisdiction on the grounds that the Ohio Court of Claims has exclusive jurisdiction over appellee's claim for money damages, and any other claims arising out of the same circumstances, pursuant to R.C. 2743.03. Appellee responded to appellants' motion on November 16, 2007, and "out of an abundance of caution," simultaneously filed a notice of voluntary dismissal without prejudice, under Civ.R. 41, of the "claims or causes of action against [appellants] for monetary damages for the loss of business, compensation, and similar damages." In their reply in support of their motion to dismiss, appellants acknowledged that appellee dismissed the claim for money damages, but contended that they are still entitled to dismissal under Civ.R. 12(B)(6) because the complaint fails to state a claim upon which relief can be granted.

{¶ 5} Specifically, appellants argued that R.C. 125.05 generally required state agencies to purchase supplies and services through a competitive bidding pro-

---

1. The July 26, 2007 complaint named University of Toledo Medical Center, Medical College of Ohio, Crown Solutions Company, L.L.C., Howard Hillard, University of Toledo Purchasing Dept., University of Toledo Office of Legal Affairs, and the state of Ohio as defendants. The complaint was amended on August 1, 2007, replacing Crown Solutions Company, L.L.C., as a defendant with Bowling Green State University. The substance of the complaint was not materially changed.

cess.[2] That statute provided:

{¶ 6} "Except as provided in division (E) of this section, no state agency shall purchase any supplies or services except as provided in divisions (A) to (C) of this section.

{¶ 7} "(A) Subject to division (D) of this section, a state agency may, without competitive selection, make any purchase of services that cost fifty thousand dollars or less or any purchase of supplies that cost twenty-five thousand dollars or less. * * *

{¶ 8} "(B) Subject to division (D) of this section, a state agency wanting to purchase services that cost more than fifty thousand dollars or supplies that cost more than twenty-five thousand dollars shall, unless otherwise authorized by law, make the purchase from or through the department. The department shall make the purchase by competitive selection under section 125.07 of the Revised Code."

{¶ 9} However, appellants emphasized that R.C. 125.04(A) expressly exempted state educational institutions from the requirements of R.C. 125.05. R.C. 125.04(A) provided that "[e]xcept for the requirements of division (B) of section 125.11 of the Revised Code, *sections 125.04 to 125.08 and 125.09 to 125.15 of the Revised Code do not apply to or affect the educational institutions of the state.*" (Emphasis added.) Moreover, although state educational institutions must comply with R.C. 125.11(B),[3] appellants argued that that section did not apply to the matter in controversy.[4] Therefore, appellants concluded that under Ohio law, they were not obligated to select the lowest responsive and responsible bidder for the contract for water-treatment services.

{¶ 10} A hearing was held on the motion to dismiss on February 13, 2008. On June 3, 2008, the trial court issued its decision and judgment entry, denying the motion. The trial court reasoned that the claims concerning money damages

---

2. The General Assembly has amended the sections of R.C. Chapter 125 relevant to this appeal. For ease of discussion, our reference to sections within R.C. Chapter 125 will be to those statutes as they existed at the time of the controversy.

3. R.C. 125.11(B) applies to contracts for the purchase of products awarded pursuant to a reverse auction under R.C. 125.072 or pursuant to competitive sealed bidding. It requires that the state agency first remove bids that offer products not produced in the United States. From among the remaining bids, the state agency "shall select the lowest responsive and responsible bid, in accordance with section 9.312 of the Revised Code, from among the bids that offer products that have been produced or mined in this state." "Products" is defined in R.C. 125.01(C) as "materials, manufacturer's supplies, merchandise, goods, wares, and foodstuffs."

4. Appellants argued that R.C. 125.11(B) applied only to "reverse auctions via the internet conducted pursuant to R.C. 125.072." Appellants did not argue that the contract in dispute was not awarded pursuant to "competitive sealed bidding" as used in the statute, nor did they argue that the contract was for the purchase of services, not products.

were voluntarily dismissed and thus the court had jurisdiction to hear the request for declaratory and injunctive relief. Further, although it is made inapplicable to state educational institutions under R.C. 125.04(A), the trial court relied on R.C. 125.05 to find that appellants were subject to the competitive-bidding process, but only to the extent of the purchase of services for more than $50,000, and the purchase of supplies for more than $25,000. Because the trial court had no indication from the hearing or the submitted briefs as to the cost of the services and supplies that were purchased, it denied the motion to dismiss.

{¶ 11} After appellants filed their answer to the complaint, the trial court set a hearing for September 18, 2008, to determine whether the contract is subject to the competitive-bidding requirements under Ohio law. Following the hearing, appellants filed a memorandum in opposition to appellee's July 26, 2007 motion for a preliminary injunction. Appellee filed its reply in support of the preliminary injunction on October 21, 2008. On January 27, 2009, the trial court issued its decision and judgment entry, denying injunctive relief but finding that appellants had failed to follow Ohio's laws regarding competitive bidding, and thus ordering that "any further contracting process currently occurring regarding additional or ongoing contracts for the services here will follow competitive bidding laws and be re-bid if such process is not being followed." The trial court additionally found that although it was not awarded injunctive relief, appellee was "nonetheless the prevailing party. As such, pursuant to R.C. 2335.39, [appellee] may be awarded attorney fees upon the proper filing of such a request and determination by this Court."

{¶ 12} Appellants filed an appeal, which this court sua sponte dismissed on March 5, 2009, on the grounds that the January 27, 2009 judgment was not a final and appealable order because it had not disposed of the attorney-fee claim and did not include the Civ.R. 54(B) language. Subsequently, on December 21, 2010, the trial court issued a judgment entry awarding $18,608.34 in attorney fees and costs to appellee.[5] Appellant has timely appealed from this judgment and now raises the following three assignments of error:

{¶ 13} 1. "The Common Pleas Court lacked jurisdiction over Plaintiff–Appellee's lawsuit for money damages against the State of Ohio."

{¶ 14} 2. "The trial court erred in deciding that state universities must competitively bid the purchase of goods and services."

---

5. In the interim, the trial court had issued another judgment entry awarding attorney fees to appellee, from which appellants appealed. This judgment included language indicating that it was a final, appealable order. On February 16, 2010, this court again dismissed the appeal because the judgment was not a final and appealable order as it did not award a specific amount in attorney fees to appellee.

{¶ 15} 3. "The trial court erred in deciding that GLA is entitled to attorney fees and costs."

{¶ 16} In support of their first assignment of error, appellants argue that appellee's attempted voluntary dismissal of only the monetary-damages claim was a nullity. And because the monetary-damages claim was never dismissed, they claim, the trial court lacked jurisdiction over the complaint pursuant to R.C. 2743.03, which states that the Court of Claims has exclusive jurisdiction over claims for money damages against the state. In response, appellee concedes that a voluntary dismissal of only a portion of its claims is a nullity, and argues only that if the trial court is found to have lacked jurisdiction, then the subsequent dismissal is a dismissal other than on the merits under Civ.R. 41(B)(4).

{¶ 17} We begin by noting that we agree with the parties that appellee's November 16, 2007 notice of partial dismissal of appellee's claims for money damages in fact had no effect. Civ.R. 41(A) provides that a plaintiff "may dismiss *all claims* asserted by that plaintiff against a defendant by * * * filing a notice of dismissal at any time before the commencement of trial." (Emphasis added.) In addressing the issue whether a plaintiff can create a final, appealable order by voluntarily dismissing the claims not ruled upon, the Ohio Supreme Court held that the language used in Civ.R. 41(A) "does not allow for the dismissal of a *portion* of the claims against a certain defendant. Civ.R. 41(A) applies to discrete parties, not discrete causes of action." (Emphasis sic.) *Pattison v. W.W. Grainger, Inc.*, 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126, ¶ 18. In its reasoning, the Ohio Supreme Court intimated that this conclusion is consistent with the general policy against piecemeal litigation and recognized that "the proper procedure for a plaintiff to dismiss fewer than all claims against a single defendant is to amend the complaint pursuant to Civ.R. 15(A)." Id. at ¶ 19. Applying this rule and reasoning to the present situation, we hold that under Civ.R. 41(A), appellee could not have dismissed only the claim for money damages while proceeding on the claims for injunctive and declaratory relief. Moreover, because appellee did not amend the complaint to remove the claim for money damages, that claim remained part of the cause of action. See *Kildow v. Home Town Improvements*, 5th Dist. No. CT2001–0057, 2002-Ohio-3824, 2002 WL 1729936, ¶ 11 ("We therefore hold that appellant's attempt to dismiss the remaining contract claims via Civ.R. 41(A)(1) was a nullity; hence said claims remain unadjudicated").

{¶ 18} Having held that the claim for monetary damages was not dismissed, we must now determine whether the trial court had jurisdiction to hear appellee's case. We hold that it did not.

{¶ 19} Section 16, Article I of the Ohio Constitution provides that "[s]uits may be brought against the state, in such courts and in such manner, as may be provided by law." In the Court of Claims Act, the General Assembly provided the framework for bringing such suits. R.C. 2743.02(A)(1) provides:

{¶ 20} "The state hereby waives its immunity from liability * * * and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties * * *."

{¶ 21} R.C. 2743.03(A) creates the court of claims and defines its jurisdiction, stating:

{¶ 22} "(1) * * * The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code * * *.

{¶ 23} "(2) If the claimant in a civil action as described in division (A)(1) of this section also files a claim for a declaratory judgment, injunctive relief, or other equitable relief against the state that arises out of the same circumstances that gave rise to the civil action described in division (A)(1) of this section, the court of claims has exclusive, original jurisdiction to hear and determine that claim in that civil action."

{¶ 24} As an initial matter, we recognize that the parties do not dispute that appellants fall within the definition of "state" provided in R.C. 2743.01(A). Thus, pursuant to R.C. 2743.03(A)(1), the Court of Claims has exclusive, original jurisdiction over appellee's claim for money damages against appellants. See *Boggs v. State* (1983), 8 Ohio St.3d 15, 17, 455 N.E.2d 1286 ("Inasmuch as this cause of action involves a civil suit for money damages against the state, the Court of Claims has original, exclusive jurisdiction. Hence, the court of common pleas lacked jurisdiction over this claim and the dismissal of this action pursuant to Civ.R. 12(B)(6) was proper"). Moreover, the Court of Claims also has exclusive, original jurisdiction over the claims for equitable relief that arise out of the same circumstances pursuant to R.C. 2743.03(A)(2). See *Osborn v. State* (Oct. 5, 2001), 6th Dist. No. H–01–011, 2001 WL 1198669 (Court of Claims had original, exclusive jurisdiction where appellant sought monetary damages in addition to a declaratory judgment against the state). Therefore, the trial court erred when it denied appellants' motion to dismiss, as appellee's claims against the state were under the exclusive jurisdiction of the Court of Claims. Accordingly, appellants' first assignment of error is well taken.

{¶ 25} Because we hold that the trial court lacked jurisdiction in this case, appellants' second and third assignments of error are rendered moot.

{¶ 26} Based on the foregoing, the judgment of the Lucas County Court of Common Pleas is void for lack of jurisdiction and is reversed and vacated. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

{¶ 27} It is so ordered.

Judgment reversed
and vacated.

HANDWORK, SINGER, and YARBROUGH, JJ., concur.

